TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00479-CV






Olin M. Blanton, Appellant



v.



City of Martindale, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 207TH JUDICIAL DISTRICT


NO. 95-0-348, HONORABLE JACK ROBISON, JUDGE PRESIDING







 Olin M. Blanton appeals from a summary judgment that he take nothing on his
causes of action against the City of Martindale. We will affirm the judgment.




THE CONTROVERSY



 During Blanton's fifth year as chief of the city's two-member police force, the city
council became dissatisfied with his performance. Actions they disliked included Blanton's failure
to establish and maintain regular office hours, failing to notify staff of his whereabouts when out
of the office during office hours, conducting city business outside the office, and using or
appearing to use his city motor car for personal errands. Additionally, one council member
believed police had not properly investigated the disappearance of the council member's canoe. 
At the council's direction in November 1994, the mayor instructed Blanton in writing to improve
certain aspects of his performance. Blanton appeared at a December 1994 council meeting to
dispute his low performance ratings and to rebut comments in the mayor's evaluation of his
performance; the council changed some ratings, but left the overall rating as "needs
improvement."

 In 1995, the city council twice voted to dismiss the fifty-nine-year-old Blanton. The
council posted notice that it would consider dismissing Blanton at a specially called council
meeting on February 20, 1995. Blanton was sent notice of the meeting. Two of the three council
members present stated they wanted to dismiss Blanton for "loss of confidence." Blanton
requested a signed complaint from the council stating the reasons for his dismissal. Twelve
citizens spoke in favor of retaining him as police chief. The three members present all voted to
dismiss him. On April 25, 1995, the council again considered Blanton's dismissal. This time the
motion carried 5-0. In June 1995, the city named the other police officer, forty-eight-year-old
Clint Meadows, the police chief.

 Blanton alleged causes of action against the city for breach of contract, age
discrimination, conversion, and intentional infliction of emotional distress. He also requested a
declaratory judgment that the council's February vote violated the statutory requirement that a
dismissal for loss of confidence must be approved by two-thirds of the council.

 The city moved for summary judgment. It contended Blanton was an at-will
employee who was discharged after having an opportunity to defend himself at the council
meeting. It contended Meadows was not so much younger than Blanton as to create a presumption
of age discrimination. The city argued it was immune from liability on the conversion and
emotional distress causes of action. It also directly attacked the factual basis for the conversion
claims. The city filed a second motion for summary judgment additionally contending that a
statutory enactment retroactively validated the February 20 discharge.

 The trial court granted the City's motion for summary judgment without specifying
the grounds therefor.


DISCUSSION AND HOLDINGS


 We begin by addressing Blanton's two challenges directed at the summary-judgment
affidavits. By point of error six, he contends the affidavit of Mayor Maebeth Bagley, regarding
the city records attached to her affidavit, is deficient because she did not prepare or direct the
preparation of the records. Because she was not mayor when Blanton was discharged, Blanton
reasons she therefore has no personal knowledge of the act, event, condition, or opinion reflected
in the records; consequently, her affidavit does not satisfy the business-records exception to the
hearsay rule. See Tex. R. Evid. 803(6). By point of error seven, he contends the affidavit of city
council member Walter Bagley, who was mayor when Blanton was discharged, is deficient
because it contains unsubstantiated opinion and was based on hearsay. Blanton also contends the
Bagleys' affidavits cannot be considered because they are from interested parties.

 Blanton's failure to object timely to the affidavits in the trial court waived his
appellate complaints. Failure to object to defects in the form of affidavits constitutes a waiver of
those defects on appeal. Tex. R. Civ. P. 166a(f); Grand Prairie Indep. Sch. Dist. v. Vaughn, 792
S.W.2d 944, 945 (Tex. 1990). Inadmissible hearsay in a summary-judgment affidavit has
probative value if the opposing party fails to object to it. In re J.A.M., 945 S.W.2d 320, 322
(Tex. App.--San Antonio 1997, no writ). A summary judgment may be based on the
uncontroverted testimonial evidence of an interested party provided the evidence is "clear,
positive, direct, otherwise credible . . . and could have been readily controverted." Tex. R. Civ.
P. 166a; see also Galvan v. Public Util. Bd., 778 S.W.2d 580, 583 (Tex. App.--Corpus Christi
1989, no writ). The critical aspect of Maebeth Bagley's affidavit (verifying the authenticity of the
city records) is clear, positive, direct, credible and could have been readily controverted. It was
not controverted. We overrule points six and seven.

 We turn to Blanton's challenges to the merits of the judgment. We review the
summary-judgment record to determine whether the movant established the absence of a genuine
issue of material fact and entitlement to judgment as a matter of law. See Tex. R. Civ. P. 166a(c);
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). We view the
record and its reasonable inferences in a light most favorable to the nonmovant and resolve against
the movant all doubts about the existence of a genuine issue of a material fact. Great Am. Reserve
Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

 Blanton contends by point of error one that the summary judgment against his
breach-of-contract claim was erroneous because he was not an at-will employee. He argues the
city's employment-policy manual created a contract the city violated in discharging him. For well
over a century, Texas courts have held that, absent a specific agreement to the contrary, the
employer or the employee may terminate the employment at will, whether for good cause, bad
cause, or no cause at all. See Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502
(Tex. 1998). Any agreement to modify at-will status must be express, clear, and specific. Byars
v. City of Austin, 910 S.W.2d 520, 523-24 (Tex. App.--Austin 1995, writ denied) (manual's
nonexclusive list of disciplinary steps does not modify at-will status). The City of Martindale's
personnel policy manual does not expressly alter the at-will status of its employees and officers. 
The manual states that "[a]ll employees are subject to termination either voluntarily or
nonvoluntary [sic]." It lists several possible grounds for involuntary termination of employment. 
Regarding dismissals for cause, it states:


Employees may be dismissed for cause. Among the reasons, but not limited to, for
dismissal are the following:


* * *



9. Any other circumstances which jeopardize the best interests of
the City.


Any regular full-time employee dismissed for cause shall be advised by the Mayor
in writing [of] the reason for termination. The employee will have the right, within
five working days, to appeal the termination to the Mayor. The Mayor will have
five days to hear the appeal and render a decision. The City Council will be
advised and the Council's decision is final.


City of Martindale Personnel Policy Manual, pp. 22-23.

 The manual's nonrestrictive language defeats Blanton's claim as a matter of law. 
The manual states dismissals may be for cause, but does not require all involuntary dismissals to
be for cause. Thus, the manual does not limit in any meaningful way the city's right to dismiss
employees without cause. It is not a contract that prohibits dismissals without cause. We overrule
point of error one.

 By point of error two, Blanton contends the court erred in granting summary
judgment because there was a genuine issue of material fact about whether the city dismissed him
for loss of confidence, incompetence, or just cause. He asserts this dispute is material because he
is entitled to vacation-time payments if he was dismissed for loss of confidence. We find no basis
for his assertion of this entitlement in the employee manual or any other part of the summary-judgment record. The manual states that employees who resign may receive pay for accrued
vacation time and that those who lose their jobs due to reorganization, elimination of position,
retirement, lack of funds, or for other administrative reasons may get vacation pay plus two weeks
pay as severance compensation. The manual does not entitle employees involuntarily dismissed
for other reasons (including cause) to vacation-time payments. Thus, Blanton is not entitled to pay
for accrued vacation time if he was dismissed on any of the grounds he asserts are in dispute. 
Because resolution of this dispute is immaterial to whether he receives pay for accrued vacation
time, the existence of any dispute does not make the summary judgment erroneous. We overrule
point two.

 Blanton contends by point of error three that the court erred in granting summary
judgment because there was a genuine issue of material fact about whether he received written
notice of the reason for his termination as required by Texas Local Government Code section
22.077 and the personnel-policy manual.

 The city did not violate the notice provisions of the statute regardless of whether
he was dismissed for incompetence or loss of confidence. Municipal officers dismissed for
incompetence in office are entitled to "due notice and an opportunity to be heard." Tex. Loc.
Gov't Code Ann. § 22.077(a) (West 1988). The statute does not require written notice of such
a dismissal, only "due" notice. The city council sent a letter to Blanton requesting his attendance
at the specially called February 20 meeting. In response, Blanton and twelve others spoke against
his termination. He thus had an opportunity to be heard regarding his competence before either
of the votes to dismiss him. If he was instead dismissed for lack of confidence, he was not
deprived of statutory notice because that subsection has no notice requirement. See id.
§ 22.077(b). Subsection (b) allows dismissals for lack of confidence at any time. See id.

 Nor did the city breach the written-notice requirement found in the personnel
manual. The manual only requires written notice of the basis for dismissal when the dismissal is
for cause. As discussed above, the city had the right to dismiss Blanton without cause. Though
the mayor and council recited the litany of low ratings at the late-1994 council meetings, the only
reference to a cause for the dismissal at the February 1995 meeting is the statement that the council
had lost confidence in Blanton. Loss of confidence is not among the list of causes of dismissal for
which the manual requires notice.

 Even if dismissals for loss of confidence or incompetence were deemed for-cause
dismissals within the manual provision, Blanton received a hearing before the mayor and council as
the manual requires. The written notification is intended to start an administrative process that
begins with a hearing before the mayor who decides and notifies the city council; the council's
decision is final. (The council is not required to hear an appeal, only to decide after being advised
of the mayor's decision.) The manual does not address dismissal by the city council itself, as
happened here. At the February meeting, Blanton and twelve citizens made their plea to retain him
before the mayor and city council. The council then voted 3-0 to discharge him and, two months
later, the full city council voted 5-0 to discharge him. The city council's initiation of the discharge
process preempted the appellate process the notice was designed to trigger. Because the council's
discharge of Blanton was final under the procedure, no lack of notice deprived him of his right to
appeal his dismissal. We overrule point three.

 By point of error four, Blanton contends the court erred in granting summary
judgment against his age-discrimination claim because a genuine issue of material fact persists
regarding the existence of a legitimate, non-discriminatory reason for Blanton's dismissal. For
purposes of the summary-judgment motion, the city conceded Blanton laid out a prima facie case
of age discrimination--he was at least forty years of age (fifty-nine), was qualified for the job, was
discharged, and was replaced by someone younger (forty-eight years of age). See O'Connor v.
Consolidated Coin Caterers Corp., 116 S. Ct. 1307, 1309-10 (1996) (setting out elements of prima
facie case).

 The burden then shifted to the city to articulate a legitimate, nondiscriminatory basis
for dismissal. See Gold v. Exxon Corp., 960 S.W.2d 378, 381 (Tex. App.--Houston [14th Dist.]
1998, no pet.). The city asserted in its original motion for summary judgment that Blanton was
discharged because "[a]fter months of unsuccessful attempts to convince Blanton to perform within
the parameters set by the City Council and the City's personnel policy manual, the Mayor and City
Council had lost confidence in Blanton's ability to perform as a police chief." The city asserted
in its motion and the record shows that in late 1994 the city council had criticized Blanton for his
failing to establish and maintain regular office hours, failing to notify staff of his whereabouts
when out of the office during office hours, conducting city business outside the office, and using
or appearing to use his city vehicle for personal errands. One council member also was
dissatisfied with how Blanton investigated the theft of his canoe; at the December 1994
performance review, the council member stated "no matter what, he would not change his attitude
about the Chief of Police." At the February 20 council meeting, called to terminate Blanton's
employment, that council member seconded the motion to dismiss him. The council members
stated they had lost confidence in Blanton as police chief.

 In response to the city's articulation of legitimate, nondiscriminatory grounds for
the dismissal, Blanton's sole argument was that incompetence could not be a legitimate basis for
his dismissal because he had been previously told only that he was discharged for loss of
confidence. This argument is ineffectual for two reasons: (1) the employer's obligation to give
a legitimate, nondiscriminatory reason for the dismissal arises only in the litigation; and (2) the
city stated in both its summary-judgment motions that the council members discharged Blanton
after they lost confidence in him as police chief.

 The judgment can stand even if Blanton did not hear, until the summary-judgment
motion, that he was dismissed for incompetence. The time-frame for notification of the reason
for dismissal under the age-discrimination scheme is different from the statutory and policy-manual
requirements for notifying the employee of a dismissal. Unlike the statutory and policy-manual
timelines discussed above, which require notification before dismissal is effective, the requirement
that the employer articulate a legitimate, nondiscriminatory basis for the dismissal arises only
during a lawsuit and after the employee makes a prima facie case of age discrimination. See Gold,
960 S.W.2d at 381. Although a delayed announcement of a reason or a statement of inconsistent
reasons could cast doubt on the legitimacy of the reasons, we find no room for such doubt here. 
The performance review and related criticisms at the council meetings in late 1994 support the
incompetence basis articulated in the first summary-judgment motion, are consistent with the loss-of-confidence basis stated at the council meeting, and were reiterated after Blanton alleged a prima
facie case.

 Further, while the judgment stands on incompetence, we note the loss-of-confidence
basis about which Blanton admits knowing is a legitimate, nondiscriminatory, statutorily
authorized basis for dismissal. Once the city articulated loss of confidence as a basis, the burden
shifted to Blanton to produce evidence that it was mere pretext for age discrimination; this burden
existed even before the rules of civil procedure authorized a no-evidence summary-judgment
motion. See Gold, 960 S.W.2d at 384-85. Though Blanton complained after the first motion that
loss of confidence was the only basis he had heard for his firing, nothing in the summary-judgment
record suggests that the alleged loss of confidence was a mere pretext for age discrimination.

 The city timely articulated legitimate nondiscriminatory grounds for dismissal for
incompetence and loss of confidence. The summary-judgment record shows no genuine dispute
regarding whether the city raised both grounds in dismissing Blanton and during the litigation. 
We overrule point four.

 By point of error five, Blanton contends the trial court should not have granted
summary judgment because there is a genuine issue of material fact about whether Blanton was
eligible for vacation time and compensatory time. As discussed above, Blanton did not leave his
employment under any of the circumstances listed in the manual authorizing compensation for
accrued vacation time. Neither was Blanton eligible for remuneration for accrued compensatory
time. The manual states the police chief is an exempt employee and will not be paid overtime. 
The only exception states that when the police chief is "required to work excessive amounts,
compensatory time will be granted with City Council approval." The current mayor averred in
her affidavit that she examined city records including council minutes and found no indication that
any such request was ever made or acted upon; this was not controverted. The city produced a
1990 memo to Blanton referring him to the policy manual and reiterating "that the chief of police
has been and will be exempt from comp time. The city council, however, will expect the chief
of police to maintain a fair and flexable [sic] schedule at all times." The former mayor's
deposition testimony that he consented to Blanton taking time off to compensate for long hours
does not create a fact question regarding whether Blanton was entitled to monetary compensation
for accrued compensatory time following an involuntary dismissal. The personnel policy manual
does not authorize payment for unused compensatory time upon termination of employment; the
manual addresses only accrued vacation time. We overrule point five.


CONCLUSION


 Having overruled all the points of error, we affirm the summary judgment that
Blanton take nothing by his claims.



 

 John Powers, Justice

Before Justices Kidd, B. A. Smith and Powers*

Affirmed

Filed: January 28, 1999

Do Not Publish




* Before John Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



m the statutory and policy-manual
requirements for notifying the employee of a dismissal. Unlike the statutory and policy-manual
timelines discussed above, which require notification before dismissal is effective, the requirement
that the employer articulate a legitimate, nondiscriminatory basis for the dismissal arises only
during a lawsuit and after the employee makes a prima facie case of age discrimination. See Gold,
960 S.W.2d at 381. Although a delayed announcement of a reason or a statement of inconsistent
reasons could cast doubt on the legitimacy of the reasons, we find no room for such doubt here. 
The performance review and related criticisms at the council meetings in late 1994 support the
incompetence basis articulated in the first summary-judgment motion, are consistent with the loss-of-confidence basis stated at the council meeting, and were reiterated after Blanton alleged a prima
facie case.

 Further, while the judgment stands on incompetence, we note the loss-of-confidence
basis about which Blanton admits knowing is a legitimate, nondiscriminatory, statutorily
authorized basis for dismissal. Once the city articulated loss of confidence as a basis, the burden
shifted to Blanton to produce evidence that it was mere pretext for age discrimination; this burden
existed even before the rules of civil procedure authorized a no-evidence summary-judgment
motion. See Gold, 960 S.W.2d at 384-85. Though Blanton complained after the first motion that
loss of confidence was the only basis he had heard for his firing, nothing in the summary-judgment
record suggests that the alleged loss of confidence was a mere pretext for age discrimination.